1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

11

GILBERTO LEON,                              1:10-cv-00898 OWW SMS HC

12                      Petitioner,          FINDINGS AND RECOMMENDATION
                                             REGARDING PETITION FOR WRIT OF
13        v.                                 HABEAS CORPUS

14

JAMES D. HARTLEY, Warden,

15                      Respondent.

16 _____/

17

18        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

19 pursuant to 28 U.S.C. § 2254.

20                              **RELEVANT HISTORY**[1]

21        Petitioner is currently in the custody of the California Department of Corrections and

22 Rehabilitation (CDCR) following his conviction in Los Angeles County Superior Court of

23 attempted voluntary manslaughter with intentional infliction of great bodily injury and

24 aggravated mayhem, both with the use of a knife.  He is serving an indeterminate sentence of life

25 plus one year with the possibility of parole.

26        Petitioner does not challenge his underlying conviction; rather, he claims the California

27 _____

28        [1] This information is taken from the state court documents attached to Respondent's answer and are not
subject to dispute.

1

1   Board of Parole Hearings ("Board") violated his due process rights in its September 9, 2008,

2   decision finding Petitioner unsuitable for parole.  Petitioner contends there was no evidence that

3   he poses a current threat to public safety.

4          Petitioner filed a habeas court petition challenging the Board's 2008 decision in the Los

5   Angeles County Superior Court on March 17, 2009.  The petition was denied in a reasoned

6   decision on July 28, 2009.  Petitioner next filed a habeas petition in the California Court of

7   Appeal, Second Appellate District, on September 23, 2009.  The appellate court denied the

8   petition on October 6, 2009.  Petitioner then filed a habeas petition in the California Supreme

9   Court on October 22, 2009.  The petition was summarily denied on April 14, 2010.

10          Petitioner filed the instant federal petition for writ of habeas corpus on May 19, 2010.

11   Respondent filed an answer to the petition on August 10, 2010.  Petitioner filed a traverse on

12   July 9, 2010, prior to Respondent's filing of the answer.

13                                    **STATEMENT OF FACTS**[2]

14          On July 2, 1990, Petitioner's former wife, Maria Castellon, contacted Petitioner.  She had

15   purchased a stove and wanted to dispose of the old one.  Petitioner told her he would help her do

16   so the next weekend.  That evening, while Castellon was away, Petitioner came to her home

17   without telling her.  Castellon had gone dancing with a male friend after 9:00 p.m., and left her

18   three youngest children in the care of her 13-year-old daughter.  Castellon arrived home around

19   1:45 a.m. to find Petitioner sitting in the kitchen with the lights off.

20          Petitioner stood up and said, "And now what?"  He began pacing and asking questions

21   insisting she tell him with whom she had been.  She refused and said, "We had already agreed

22   that I would make my own life."  Castellon's daughter heard Petitioner threaten Castellon to tell

23   him or else "we're both going to die."  Petitioner stated, "The children were alone. Where were

24   you?"  He then grabbed a hammer but put it away after she asked whether he was going to kill

25   her.  When Castellon would not reveal the name of her date, Petitioner sat down again and began

26   to cry.

27   ─────────────────

28          [2] This information is derived from the summary of the crime set forth in the opinion of the California Court of Appeal, Second Appelate District, on direct appeal of the underlying conviction. (See Resp't's Answer Ex. 2.)

2

Castellon went into the bedroom and thought she heard Petitioner leave after using the bathroom.  Petitioner opened the bedroom door a moment later and entered.  He picked up the telephone and stated, "I'm going to take the children away from you," then dialed.  After hanging up, Petitioner ran toward the kitchen where he obtained a knife and returned.  He came at Castellon, who screamed, "No, don't do it."  Petitioner replied, "This is where you are going to end," as Castellon sat on the bed.

Petitioner then stabbed her quickly and repeatedly with the knife.  He grabbed her feet and lifted them, trying to stab her in the "private parts."  She turned face down to deter him from doing this, causing her to be stabbed in the back.  When Petitioner cut Castellon on her throat, she pushed him away with her feet and legs, and he left through the kitchen.

Castellon was taken to a medical center trauma center in critical condition.  She had sustained twelve stab wounds and lost much blood, leading to concern that she would not survive.  She had one stab wound in the neck, three in the back, two in the buttocks, one in the left upper abdomen, and five in her left arm.  She needed to be resuscitated with a tube in her windpipe, and her left kidney and part of her colon had to be removed.  A colostomy was required because of extensive laceration of her colon, and she suffered a collapsed left lung. There was also extensive damage to the muscles and tendons of her left arm that limited the use of her left hand.  She initially remained in the hospital for fifteen days and returned for another eight days for further surgery to repair her colon. She was left scarred and in great pain.

**DISCUSSION**

I.    Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its

1   provisions.

2          Petitioner is in custody of the California Department of Corrections and Rehabilitation

3   pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state

4   court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because

5   he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass

6   v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v.

7   Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a

8   habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the

9   petition is not challenging his underlying state court conviction.'").

10         The instant petition is reviewed under the provisions of the Antiterrorism and Effective

11   Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63,

12   70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the

13   adjudication of the claim "resulted in a decision that was contrary to, or involved an

14   unreasonable application of, clearly established Federal law, as determined by the Supreme Court

15   of the United States" or "resulted in a decision that was based on an unreasonable determination

16   of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.

17   § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

18         "[A] federal court may not issue the writ simply because the court concludes in its

19   independent judgment that the relevant state court decision applied clearly established federal

20   law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.

21   A federal habeas court making the "unreasonable application" inquiry should ask whether the

22   state court's application of clearly established federal law was "objectively unreasonable."  Id. at

23   409.    Petitioner has the burden of establishing that the decision of the state court is contrary to

24   or involved an unreasonable application of United States Supreme Court precedent. Baylor v.

25   Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the

26   states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a

27   state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th

28   Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

II.     Review of Petition

There is no independent right to parole under the United States Constitution; rather, the

right exists and is created by the substantive state law which defines the parole scheme.  Hayward

v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen, 482

U.S. 369, 371 (1987); Pearson v. Muntz, No. 08-55728, 2010 WL 2108964, * 2 (9th Cir. May

24, 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174

(2005)); Cooke v. Solis, No. 06-15444, 2010 WL 2330283, *6 (9th Cir. June 4, 2010).

"[D]espite the necessarily subjective and predictive nature of the parole-release decision, state

statutes may create liberty interests in parole release that are entitled to protection under the Due

Process Clause." Bd. of Pardons v. Allen, 482 U.S. at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is

suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.

> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b).  Section 2402(c) sets forth circumstances tending to

demonstrate unsuitability for release.  "Circumstances tending to indicate unsuitability include:

> (1) Commitment Offense.  The prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:

> > (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
> > (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
> > (C) The victim was abused, defiled or mutilated during or after the offense.
> > (D) The offense was carried out in a manner which demonstrates an

5

exceptionally callous disregard for human suffering.
(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence.  The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History.  The prisoner has a history of unstable or tumultuous relationships with others.'

(4) Sadistic Sexual Offenses.  The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors.  The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior.  The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

Section 2402(d) sets forth the circumstances tending to show suitability which include:

(1) No Juvenile Record.  The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History.  The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime.  The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome.  At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

(7) Age.  The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

The California parole scheme entitles the prisoner to a parole hearing and various

procedural guarantees and rights before, at, and after the hearing. Cal. Penal Code § 3041.5. If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute. Id. In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5. The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential. In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause. Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d 606, 608-609 (9th Cir. 2010). Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence. Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Lawrence Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prison remains a danger to the public. It is not the existence or

nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the

significant circumstance is how those factors interrelate to support a conclusion of current

dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the

central issue of *current* dangerousness when considered in light of the full record before the

Board or the Governor.'" Cooke v. Solis, 606 F.3d 1206, 1214 (9th Cir. 2010) (emphasis in

original) (citing Hayward v. Marshall, 603 F.3d at 560).

A.    State Court Decisions

The superior court provided the last reasoned decision, rejecting Petitioner's claim as

follows:

> The Board found the Petitioner unsuitable for parole after a parole consideration
> hearing held on September 9, 2008.  The Petitioner was denied parole for one year.  The
> Board concluded that the Petitioner was unsuitable for parole and would pose an
> unreasonable risk of danger to society and a threat to public safety.  The Board based its
> decision on several factors, including his commitment offense, his minimization of his
> past conduct, as well as his failure to solidify a relapse prevention plan for his release.
>
> The Court finds that there is some evidence to support the Board's finding that the
> victim was abused during the offense and that the offense demonstrated an exceptionally
> callous disregard for human suffering. [Citation.] The victim was maimed and severely
> injured when the Petitioner repeatedly stabbed her.  She was then left bleeding and
> suffering on the floor of her bedroom when the Petitioner left her to die.  The offense
> [sic] abused the victim and demonstrated an exceptionally callous disregard for her
> suffering.
>
> After a long period of time, a commitment offense may no longer indicate a
> current risk of danger to society in light of a lengthy period of positive rehabilitation.
> [Citation.] However, certain offenses may be so "heinous, atrocious or cruel" that an
> inmate's due process rights are not violated by a denial of parole on that basis. [Citation.]
> Here, the record indicates that the Petitioner brutally stabbed the victim multiple times all
> over her body, inflicting severe damage and then left her to die.  Further, as discussed
> below, the Board also considered the Petitioner's minimization of his past violence
> against the victim.  In cases, such as this one, where other factors indicate a lack of
> rehabilitation, the aggravated circumstances of the offense may provide some evidence of
> current dangerousness, even decades after it is committed. [Citation.]
>
> The Board noted that the Petitioner minimized his past actions against the victim.
> For example, when discussing a prior incident in which he threatened to kill the victim,
> the Petitioner told the Board that when he made the threat, he "just said it playing
> around."  Additionally, in response to the Board's questions regarding his past abuse of
> the victim, the Petitioner commented that he and the victim "had some fights."  An
> inmate's statements regarding his past brutalizing conduct toward his victim may indicate
> a lack of insight and provides a nexus between the offense and the inmate's current
> dangerousness. [Citation.] As in this case, the inmate in *Shaputis* characterized violence
> against his wife as "a little fight" and he failed to recognize his history of brutalizing

behavior toward her. The California Supreme Court held that in light of the inmate's history of domestic abuse, his comments indicated that he was unable to gain insight into his antisocial behavior despite decades of rehabilitative programming in prison. [Citation.] Here, the Petitioner's similar claims regarding his past abusive conduct against the victim indicate that he has failed to gain insight into that pattern of violent behavior and that he remains an unreasonable risk of danger to society.

The Board also considered the Petitioner's failure to obtain locations for Alcoholics Anonymous meetings for his parole plans. While this factor, alone, may not justify a finding of unsuitability, the Board may properly consider it as relevant to a determination of whether the Petitioner is suitable for parole. [Citation.]

The Board also considered the Petitioner's post-conviction gains, including his vocations in mill and cabinet, carpentry and auto mechanics; his work as a P.I.A. machinist; his GED; his participation in Alcoholics Anonymous for 17 years; as well as his participation in numerous self-help programs. However, they still concluded that the Petitioner would pose an unreasonable threat to public safety. [Citation.] [Citation.] The Court finds that there is some evidence to support this determination because his continued minimization of his past violence against the victim indicates a lack of insight regarding his past antisocial conduct and provides a nexus between his brutal commitment offense and his current dangerousness.

B.      2008 Board Decision

As discussed by the superior court, the Board found Petitioner unsuitable for parole based on the circumstances of the commitment offense, his minimization of his past conduct, and his failure to solidify his parole plans to prevent a relapse.

The Board first found that the commitment offense was a factor indicating unsuitability for parole. The Board determined the offense was committed in an especially heinous, atrocious or cruel manner. In making this determination, the Board found that the offense was carried out in a manner that demonstrated an exceptionally callous disregard for human suffering. Cal. Code Regs., tit. 15, § 2402(c)(1)(D). In addition, the Board found that the victim was mutilated during the offense. Cal. Code Regs., tit. 15, § 2402(c)(1)(C). The superior court determined that there was at least some evidence to support these findings. Petitioner repeatedly stabbed and maimed the victim, and then left her to suffer. The stab wounds to the victim were severe. In light of the facts of this case, the state court decision finding some evidence of this factor was not unreasonable.

The Board also noted Petitioner's prior history of domestic violence demonstrated unsuitability. Cal. Code Regs., tit. 15, § 2402(c)(2). Petitioner had committed spousal abuse in the past with this same victim. Thus, there was some evidence to support the Board's finding.

1   The Board next determined that Petitioner's minimization of his past actions against the

2   victim demonstrated unsuitability.  The Board noted that Petitioner's response to his previous

3   death threat to the victim was that he "just said it playing around."  When asked about his

4   previous incidents of abuse toward the victim, Petitioner stated only that they "had some fights."

5   Given Petitioner's comments regarding his relationship with the victim, the Board determined

6   that Petitioner lacked appropriate insight into his offense and caused him to remain an

7   unreasonable risk of danger to the public, in particular, to women who he might become involved

8   with should he be released from prison.  "An inmate's version of the offense may indicate a lack

9   of insight and provide a nexus between the offense and his current dangerousness." In re

10  Shaputis, 44 Cal.4th 1241, 1260 (2008).  The superior court's determination that some evidence

11  supported the Board's finding was not unreasonable.

12  Finally, the Board determined that Petitioner had failed to make viable plans for release

13  on parole.  The Board was especially concerned with Petitioner's alcohol dependency since

14  alcohol played a role in the commitment offense.  Although Petitioner had been participating in

15  Alcoholics Anonymous while in prison, he had not obtained locations of any programs should he

16  be released.

17  The Board found that Petitioner posed an unreasonable risk of relapse which could lead again to

18  violence.

19  The Board also considered Petitioner's positive factors.  His psychological evaluation

20  was favorable.  He had obtained several vocations and his GED.  He was an active participant in

21  Alcoholics Anonymous and he had participated in numerous self-help programs.  Nevertheless,

22  after considering the factors in favor of suitability, the Board concluded that the positive aspects

23  of Petitioner's behavior did not outweigh the factors of unsuitability.  The Board determined that

24  the circumstances of Petitioner's commitment offense and prior history of domestic violence,

25  along with his minimization of his actions and his lack of viable parole plans were more

26  probative of a danger to the public should Petitioner be released.  The state courts' determination

27  that there was some evidence to support the Board's 2008 decision is not an unreasonable

28  application of California's some evidence standard, nor an unreasonable determination of the

1   facts in light of the record.  Accordingly, federal habeas corpus relief is unavailable.

2                                    **RECOMMENDATION**

3           Based on the foregoing, it is HEREBY RECOMMENDED that:

4           1.      The instant petition for writ of habeas corpus be DENIED; and

5           2.      The Clerk of Court be directed to enter judgment in favor of Respondent.

6           This Findings and Recommendation is submitted to the assigned United States District

7   Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the

8   Local Rules of Practice for the United States District Court, Eastern District of California.

9   Within thirty (30) days after being served with a copy, any party may file written objections with

10  the court and serve a copy on all parties.  Such a document should be captioned "Objections to

11  Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served

12  and filed within fourteen (14) days after service of the objections.  The Court will then review the

13  Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that

14  failure to file objections within the specified time may waive the right to appeal the District

15  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

16

17  IT IS SO ORDERED.

18  **Dated:    November 2, 2010            /s/ Sandra M. Snyder**
                                        UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28